**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| James Kehoe, | |
|     Plaintiff, | |
| | Case No. 21 C 6667 |
| v. | |
| | Hon. LaShonda A. Hunt |
| Board of Trustees of the University of Illinois, | |
|     Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Kehoe ("Kehoe") brought this action against his now-former employer, Defendant Board of Trustees of the University of Illinois ("the Board"), alleging retaliation for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. The Board maintains that Kehoe was terminated after receiving progressive discipline for attendance and other rule violations. The parties have filed cross motions for summary judgment. For the following reasons, the Board's motion for summary judgment [20] is granted and Kehoe's motion for summary judgment [24] is denied.

## BACKGROUND

In 1999, the Board hired Kehoe as a police officer for the University of Illinois Chicago Police Department ("UICPD"). All sworn officers are required to know and follow UICPD rules, guidelines, policies, and procedures, including those found in the UICPD Code of Conduct, which is set forth in General Order 570.100. The relevant policies prohibit officers from failing to perform any duty (Rule 5), disobeying any lawfully written, electronic, or oral order or directive of a superior or another employee who is relaying the order of a superior (Rule 6), and being tardy for duty assignment, court appearance, and roll call (Rule 21). Specifically, UICPD's sick leave policy,

1

which is found in the UICPD Standard Operating Procedure, requires officers seeking to use sick benefit time to call in at least one hour prior to their scheduled start time unless it can be shown that such notification was reasonably impossible.

During his tenure as a UICPD officer, particularly in the last five years, Kehoe was disciplined multiple times for attendance issues.[1] In August 2016, the Board issued to him a letter of warning for arriving 45 minutes late to work. In February 2018, Kehoe received another letter of warning for being 3 hours and 45 minutes late to work. In January 2019, Kehoe received a letter of warning after failing to report for a mandatory training session. By September 2019, the discipline had escalated. The Board suspended Kehoe for 1 day (instead of 5 days) for arriving 2 hours and 45 minutes late to the range in July 2019 and arriving 16 minutes late to work in August 2019.

In August 2020, Kehoe was suspended again, this time for 30 days, for failing to report damage to a department vehicle and then providing a false statement about the incident. Kehoe was allowed to accept the suspension and a demotion from sergeant to police officer in lieu of termination.

On June 2, 2021, Kehoe was 2 hours and 26 minutes late to work. He claimed to have overslept after taking a prescription sleeping pill the night before. Sergeant Tom Hochbaum ("Sgt. Hochbaum") conducted a preliminary investigation and determined that Kehoe violated Rule 21 of General Order 570.100 prohibiting tardiness. Following this investigation, Kehoe was advised that even though the Board could have sought to terminate his employment due to progressive

---

[1] Kehoe disputes the materiality of any disciplinary incident prior to July 7, 2021, but not the factual accuracy of that information. In discrimination or retaliation cases where the employer's motive for taking an adverse action is always at issue, a history of similar infractions by the employee and progressive discipline that is relied upon by the decisionmaker is typically relevant. The weight given to such evidence, however, will depend on the particular circumstances of the case. Here, as discussed *infra,* the Court finds this evidence to be material and persuasive.

disciplinary actions, it would instead seek to suspend him for 30 days under the State University Civil Service Employees process. But prior to any discipline being instituted for the June 2021 incident, a month later, Kehoe failed to call in at least an hour before work.

On July 7, 2021, Kehoe was scheduled to work his normal shift from 6:00 a.m. to 4:00 p.m. Kehoe awoke that morning at 4:30 a.m. with terrible pain in his left arm and neck, spasms, and a loss of feeling and mobility in his left arm. Despite these medical issues, he was conscious, and able to communicate and give directions to his wife. Kehoe's wife helped him get dressed and dropped him off at Northwest Community Hospital sometime around 5:45 a.m. Kehoe asked his wife to tell Sgt. Hochbaum that Kehoe would not be able to make it to work. At 5:45 a.m., Kehoe's wife called Sgt. Hochbaum and relayed the message. Kehoe followed up with a text message to Sgt. Hochbaum at 6:33 a.m. to confirm that his wife had called.

Kehoe was admitted to the hospital that morning. The same day, he emailed Kristin Thomas ("Thomas") in the UICPD Human Resources department requesting assistance with FMLA leave. On July 7, Thomas emailed Kehoe the FMLA forms and instructions for completing them. Kehoe faxed his completed FMLA form to Sgt. Hochbaum on July 15, 2021. Kehoe signed the form on July 7, requesting FMLA leave from July 14 through September 14, 2021. On July 28, 2021, the Board approved Kehoe's FMLA leave for July 14 through September 14, as requested.

UICPD Captain Jason Huertas ("Capt. Huertas") investigated whether Kehoe violated the sick leave policy on July 7, 2021. When Kehoe returned to work on August 22, 2021, he was served with a Notice of Infraction as a result of his failure to call in more than one hour before the start of his scheduled shift on July 7, in violation of General Order 570.100, Rules 5 and 6. Kehoe responded to the Notice, explaining his position that it was "reasonably impossible" for him to abide by the sick leave policy that day. He also met with the UIC Human Resources department to

review the infraction and present evidence on his behalf. Unconvinced by Kehoe's responses, Capt. Huertas found that it was not "reasonably impossible" for Kehoe to provide the required notice and recommended termination. Captain Stanley Grice and Chief Kevin Booker reviewed the records and concurred.

On August 25, 2021, Kehoe was served with an Internal Affairs Complaint, in which he was suspended for violating General Order 570.100, Rules 5 and 6. On September 17, 2021, Kehoe received a letter from the Board informing him that it intended to initiate discharge proceedings against him. On October 5, 2021, the Board served Kehoe with written charges for discharge and suspension notice pending discharge for the infractions on June 2, 2021 and July 7, 2021.

An independent hearing officer with the Illinois State University Civil Service System held a two-day evidentiary hearing to determine if there was just cause to terminate Kehoe for the two incidents. The hearing officer concluded that such cause existed, and, upon review of the hearing officer's findings, the State University Civil Service Merit Board terminated Kehoe's employment, effective April 7, 2022. Written findings of fact were also issued in support of the decision. Kehoe filed an appeal of his termination to the state court. Prior to the effective date of his termination, Kehoe brought this lawsuit in December 2021 alleging the Board retaliated against him for taking FMLA leave.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality is guided by

substantive law; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfy these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. . . . If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). In cases where the movant does not bear the burden of proof, the movant must simply point to an absence of evidence to support the nonmovant's case. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Reliance on the pleadings alone is not enough for a nonmovant to defeat a motion for summary judgment. *Celotex*, 477 U.S. at 324.

The court must draw all "justifiable" inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 155; *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). A court may, but is not required to, consider other materials in the record when determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c)(3). Finally, a court must refrain from weighing evidence, drawing inferences, or

making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## <u>DISCUSSION</u>

The FMLA provides eligible employees with up to 12 weeks of leave over the course of a 12-month period for certain life events or health conditions. 29 U.S.C. § 2612(a)(1). While the leave may be unpaid, employees retain their benefits and are entitled to return to the same or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 U.S.C. §§ 2612(c), 2614(a)(1). An employer violates the FMLA if it interferes with an employee's FMLA rights or discriminates against an employee for exercising his FMLA rights. *See* 29 U.S.C. §§ 2615(a)(1) (interference); 2615(a)(2) (discrimination).[2]

Retaliation against an employee for taking FMLA leave is likewise prohibited under 29 U.S.C. § 2615. *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) ("We have construed [§ 2615(a)(2) and (b)] to create a cause of action for retaliation."). A retaliation claim invokes a question of intent: "[t]he issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999). A successful claim of retaliation does not require plaintiff to demonstrate that "retaliation was the *only* reason for her termination." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Rather, "'showing that the protected conduct was a substantial or motivating factor in the employer's decision'" is sufficient. *Id.* at 741-42 (*citing Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)).

---

[2] Specifically, 29 U.S.C. § 2615(a)(1) states that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter;" 29 U.S.C. § 2615(a)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

Plaintiffs may establish a prima facie case of FMLA retaliation using either a direct or indirect method of proof. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008). To prevail under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) his employer took adverse action against him; and (3) the protected activity caused the adverse action. *Long v. Tchrs.' Ret. Sys. of Ill.*, 585 F.3d 344, 349-50 (7th Cir. 2009). Causation may be demonstrated by either direct or circumstantial evidence. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Direct evidence "typically involves an admission by the decision maker regarding the retaliatory intent," *id.*, while circumstantial evidence "may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Long*, 585 F.3d at 350.

To prevail under the indirect method, a plaintiff must show that he "(1) engaged in a statutorily protected activity; (2) met [his] employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Caskey*, 535 F.3d at 593; *see also Hull v. Stoughton Trailers, LLC.*, 445 F.3d 949, 951 (7th Cir. 2006). Once a *prima facie* case is established, the burden shifts to the employer to state a legitimate, non-discriminatory reason for the adverse employment action. *Caskey*, 535 F.3d at 593. Finally, if the employer is successful, the burden shifts back to the plaintiff to show that the proffered explanation is pretextual. *Id.*

Kehoe asserts that summary judgment is warranted in his favor because the Board retaliated against him for taking approved FMLA leave since his medical condition made it "reasonably impossible" for him to notify his employer of his absence more than an hour before the start of his shift as required by the UICPD Standard Operating Procedure. (Pl. Mem. in Supp. at 4-5, Dkt. 25). On the one hand, Kehoe appears to be challenging the UICPD policy as interfering with his

exercise of FMLA rights by requiring a call-in for sick leave before a certain time. (*Id.* at 2-6). On the other hand, Kehoe acknowledges that retaliation and interference are distinct claims under the FMLA and expressly states that his case is brought "under the retaliation (or discrimination) theory" only. (*Id.* at 3).

The Board contends that summary judgment in its favor is appropriate because Kehoe cannot meet his *prima facie* burden of showing causation as he was terminated for tardiness on June 2, 2021 and failure to call in an hour before his shift on July 7, 2021, not for requesting and receiving approved FMLA leave from July 14 through September 14, 2021. (Def. Mem. in Supp. at 9-13, Dkt. 21).

Kehoe is apparently proceeding under the direct method only. *See* Plt. Reply Mem. at 4, Dkt. 34) ("the parties need not resort to a discussion of pretext and circumstantial evidence in this extremely troubling and clear-cut case"). The parties agree that the first two elements are easily resolved. Taking FMLA leave is a statutorily protected activity. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). Similarly, the August 2021 suspension and April 2022 termination are adverse actions.[3] *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022).

The only disputed element, then, is causation. On that point, Kehoe argues that the Board's statement that he was fired for violating the one-hour, pre-shift requirement is direct evidence of its retaliatory animus. According to Kehoe, the Board has essentially admitted that his request for and use of FMLA time got him fired. The Court disagrees. The facts do show that Kehoe suffered a serious medical event on July 7 and was approved for FMLA leave starting on July 14. But the

---

[3] As noted *supra,* Kehoe filed this complaint in December 2021 a few months after his initial suspension but several months before he was finally terminated by the Board. However, neither party has suggested that Kehoe did not sustain an actionable adverse employment action.

basis for his termination was tardiness on June 2 and failure to notify UICPD by 5:00 a.m. that he would miss his 6:00 a.m. shift on July 7. True, the July 7 policy violation that arguably precipitated the recommendation to terminate his employment occurred on the same date as the medical event that necessitated FMLA leave, but that fact alone does not establish the requisite causal connection.

Regardless of whether Kehoe provided late notification to UICPD about the need to miss work because of a medical emergency that qualified for FMLA leave or because he took medication that caused him to oversleep, the bottom line is Kehoe failed to call-in at least an hour before his July 7 shift. Nothing in the Board's statement implies a nexus between Kehoe needing to take approved FMLA leave and his subsequent termination for repeated attendance violations. Any suggestion that his notice of the need for FMLA leave on July 7 caused the Board to initiate discharge proceedings is belied by the record. Kehoe had been disciplined on numerous occasions and given progressive discipline. In fact, the Board was planning to suspend him for the June 2 infraction when the July 7 incident occurred. Kehoe conveniently ignores the fact that he was already facing his second suspension in lieu of termination in less than a year. While the grounds for such serious discipline in August 2020 and June 2021 differed, it was clear that the likely next step for future policy and rule violations would be ending his employment.

The Court notes that the parties spend an inordinate amount of time in their briefs arguing about the merits of the termination decision, and whether the notice requirement in the sick-leave policy runs afoul of the FMLA and its regulations, or the decisionmakers incorrectly concluded that Kehoe did not satisfy the "reasonably impossible" standard, or even if Kehoe's leave should have been back-dated from his requested date of July 14 to his hospitalization date of July 7. To be clear, those may be questions the state court reviewing his termination appeal will consider (or has already considered). But Kehoe has not shown the relevance of any of those arguments to the

9

narrow issue before this Court—has he has presented direct evidence of retaliatory animus by the Board. Based on this record, the Court finds that he has not.

Kehoe also attempts to rely on circumstantial evidence to make a direct case, but that too is insufficient. He focuses on suspicious timing and the fact that he was served with the infraction notice on August 22, the same day he returned from his approved FMLA leave. Although Kehoe was permitted to continue working, he was also warned that following an investigation, he might suffer disciplinary action. Unfortunately for Kehoe, "temporal proximity alone is not sufficient to withstand summary judgment." *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747 (7th Cir. 2009) (termination for poor work performance while employee was on FMLA leave was not retaliatory); *see also Lutes v. United Trailers, Inc.*, 950 F.3d 359, 369 (7th Cir. 2020) (suspicious timing alone was not enough to establish causal connection necessary for FMLA retaliation claim); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("We have repeatedly held that 'temporal proximity' or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment."); *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) ("Suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.").

In support of his position, Kehoe cites to *Durns v. Family Guidance Ctrs., Inc.*, a case where the district court denied summary judgment to an employer who had terminated the plaintiff two days after his return from FMLA leave. No. 19 C 4154, 2021 WL 4477919, at *1 (N.D. Ill. Sept. 29, 2021). Prior to taking leave, the plaintiff was subject to multiple disciplinary actions based on deficient work performance, specifically in the documentation of his work. *Id.* at *1-6. The plaintiff had been suspended and warned that failure to comply with certain terms upon his return to work could result in termination of his employment. *Id.* at *2. Still, the court determined

that a question of fact existed on the plaintiff's FMLA retaliation claim as the employer had offered vague statements and no real details about how the plaintiff's documentation continued to fall short. *Id.* at *8. *Durns* turned on the short amount of time that elapsed between plaintiff's return from leave and termination *and* the employer's failure to articulate a detailed rationale for its decision.

Unlike the employer in *Durns*, the Board's investigation of the incidents that led to Kehoe's termination was robust and its findings were thorough. Kehoe was notified of the infractions and charges in writing and given ample opportunity to respond and present his own evidence at a two-day evidentiary hearing. Throughout this process, the Board's explanation has not changed. Again, Kehoe was well aware *before he asked for FMLA leave* that the Board was seeking to suspend him for the June 2 incident. That UICPD also wanted to get the ball rolling on its investigation of the July 7 incident as soon as Kehoe returned to work and could respond to its inquiries is hardly suspicious.

Kehoe cites additional cases involving employees who made a complaint and were fired shortly thereafter, but as discussed, those scenarios are readily distinguishable based on the facts presented here. Indeed, beyond timing, Kehoe does not cite to any other circumstantial evidence such as "ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Long,* 585 F.3d at 350. And the Court finds nothing of the sort in this record.

Because Kehoe did not establish causation through either direct or circumstantial evidence, the Court would normally consider proof under the indirect method. However, Kehoe offered no argument or evidence in support, and the record is silent as to any comparable employee who was

treated better. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481-82 (7th Cir. 2006). Thus, his *prima facie* burden would still not be satisfied.

More importantly, even if Kehoe were successful, the Board has provided a legitimate, non-discriminatory reason for Kehoe's suspension and termination that is not pretextual. "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Tibbs v. Admin. Office of the Illinois Courts*, 860 F.3d 502, 506 (7th Cir. 2017) (citations and quotations omitted). Aside from his personal belief that the Board wrongly interpreted the sick leave policy, Kehoe does not point to any evidence that calls into question the Board's motive for terminating him. Given that Kehoe had a history of progressive discipline for attendance violations and the Board was in the process of suspending him for being tardy on June 2, the Court cannot say that the Board's termination decision is questionable, let alone draw the inference that the provided reasons are false. As such, any FMLA retaliation claim using the indirect method would also fail.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Board of Trustees for the University of Illinois' motion for summary judgment [20] and denies Plaintiff James Kehoe's motion for summary judgment [24]. Judgment is entered in favor of Defendant.


Dated: January 26, 2024                          **ENTERED**:


                                                 LaShonda A. Hunt
                                                 United States District Judge


12